UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| SECURITY INSURANCE | : 3:06CV158 |
| COMPANY OF HARTFORD, Itself | : |
| and as successor in | : |
| interest to THE FIRE AND | : |
| CASUALTY INSURANCE COMPANY | : |
| OF CONNECTICUT, | : |
| | : |
| v. | : |
| | : |
| UNIVERSAL REINSURANCE | : |
| COMPANY LTD., | : |

## RULING ON PENDING MOTIONS

This is a breach of contract action relative to a Quota Share Treaty Reinsurance Agreement entered into between plaintiff Security Insurance Company of Hartford's predecessor in interest, The Fire and Casualty Insurance Company of Connecticut, and Universal Reinsurance Company LTD. Plaintiff filed a motion to strike defendant's answer for failure to post collateral as an unauthorized insurer in compliance with Connecticut General Statutes section 38a-27. Defendant opposes the motion to strike and has filed motions to dismiss for lack of subject matter jurisdiction and for summary judgment. The Court will address the motion for summary judgment in a separate ruling.

For the following reasons, the Court will grant the motion to strike in part and deny the motion to dismiss.

## Background

For purposes of the motions to strike and to dismiss, the Court recites the following facts that are reflected in plaintiff's complaint and the operative contract.

Effective January 1, 2003, Fire and Casualty, plaintiff's predecessor in-interest, and Universal entered into a Quota Share Reinsurance Agreement concerning an insurance program known as the Real Estate Licensee Professional Liability Program

(the "Williams Group Program").  The Williams Group Program provided errors and omissions professional liability insurance for real estate brokers licensed in the states of Nebraska and New Mexico.  Williams Underwriting Group issued insurance policies on Fire and Casualty's behalf.

Article III entitled Reinsuring Clause states:

By this Contract the Company [Fire and Casualty] obligates itself to cede to the Reinsurer [Universal] and the Reinsurer obligates itself to accept 100% quota share reinsurance of the first $100,000 of Company's Net liability up to the greater of $1,000,000 or 80.4% of the Gross Written Premium, as defined in Article II, . . .

Article XXIV entitled GAP Collateral obligated Universal to post collateral for the difference between the "Loss Fund" as defined by the contract and the greater of $1,000,000 and 80.4% of the Gross Written Premium[1]:

As regards the Policies issued by the Company coming within the scope of this Contract, the Company agrees to calculate the level of collateral required for the Reinsurer's Gap Obligation, which term is defined as the difference between the Loss Fund, as such term is defined herein, and the greater of $1,000,000 or 80.4% of the Gross Written Premium, as such term is defined herein.  The Reinsurer agrees to provide collateral for the Reinsurer's GAP Obligation by a security trust account (i.e. New York Regulation 114 Trust), cash advances or a letter of credit.  The amount of such collateral will be calculated and secured in advance based on the estimated Gross Written Premium for the Program and adjusted only as the actual Gross Written Premium exceeds the estimated Gross Written Premium as shown in the statement prepared by the Company (the "Reinsurer's Gap Collateral Obligation").  To fund [Universal's] Gap Collateral Obligation, [Universal] shall provide a letter of credit initially funded with a deposit in the amount of $73,500 on or before February 3, 2003 with three additional deposits based on actual Gross Written Premium amounts on or before April 1, 2003, July 1, 2003 and October 1, 2003.

---

[1]"Loss Fund" means "the Direct Collected Premium, less the ceding commission, less any applicable excise taxes payable, less any fees charged for the management of the captive reinsurance facility, less any brokerage fees, if applicable."  Article II.

Plaintiff Security Insurance now alleges that the amount of GAP Collateral posted by Universal is deficient by $111,186, and that defendant agreed to act as plaintiff's reinsurer. Defendant maintains that it served only as a rent-a-captive by providing insurance facilities for a fee without accepting any risk for liability under the contract.

## DISCUSSION

### Motion to Strike

Plaintiff moves to strike defendant's answer and motions for failure to post collateral as an unauthorized insurer in the state of Connecticut as required by Connecticut General Statutes section 38a-27. Defendant argues that it is statutorily exempt from this requirement.

Section 38a-27 provides that "[b]efore any unauthorized person or insurer files or causes to be filed any pleading in any court action or proceeding," that entity must deposit with the clerk of the court collateral sufficient to secure the payment of any final judgment.

Relevant to the term "insurer," Connecticut General Statutes section 38a-271(a) provides:

> Unless otherwise indicated, as used in sections 38a-27, and 38a-271 to 38a-278, inclusive, "insurer" includes all corporations, associations, partnerships and individuals engaged as principals in the business of insurance . . . . Any of the following acts effected in this state by mail or otherwise is defined to be doing an insurance business in this state: (1) The making of or proposing to make, as an insurer, an insurance contract;. . .(4) the receiving or collection of any premium, commission, membership fees, assessments, dues or other consideration for any insurance or any part thereof; . . .and (8) any other transactions of business in this state by an insurer.

Universal satisfies the definition of an insurer because it entered into the reinsurance contract with Fire & Casualty and appears to have received a fee pursuant to that contract.

Defendant asserts that it should be exempt from the collateral requirement of 38a-27 because it is a reinsurer and because the contract concerns policies outside of the state of Connecticut.[2]  Section 38a-271(c) does provide for several exceptions to the collateral requirement of section 38a-27.  However, reinsurance contracts are not listed among these exceptions.

Section 38a-271(c)(2) states that the collateral requirement does not apply to "transactions, in this state, involving a policy lawfully solicited, written and delivered outside of this state covering only subjects of insurance not resident, located or expressly to be performed in this state at the time of issuance, and which transactions are subsequent to the issuance of such policy. . . ."  Defendant's reliance on this exception is misplaced since this action, as alleged, concerns defendant's reinsurance contract covering plaintiff's predecessor, Fire and Casualty, in Connecticut.  Accordingly, the Court will grant plaintiff's motion to strike in part.  The Court will not strike defendant's pleadings but will order defendant to post collateral in the amount of $111,186.  If defendant does not comply in accordance with this order, the Court will strike the pleadings.

---

[2]The Court is unpersuaded by defendant's procedural arguments based on the timeliness of plaintiff's motion and plaintiff's alleged waiver of section 38a-27.

Motion to Dismiss

Defendant moves to dismiss this action for lack of subject matter jurisdiction, arguing that the amount in controversy is less than the requisite amount of $75,000, and that plaintiff lacks standing.

Federal jurisdiction is proper where there exists diversity of citizenship between the parties and the claim exceeds the required jurisdictional amount of $75,000. 28 U.S.C. § 1332(a). In order to determine whether the amount in controversy requirement has been met, courts apply the legal "certainty test." Hough v. Merrill Lynch, Pierce, Fenner & Smith, 757 F. Supp. 283, 285 (S.D.N.Y. 1991), affirmed, 946 F. 2d 883 (2d Cir. 1991). The test provides that if it appears to a "legal certainty" that the amount at issue is really less than the jurisdictional minimum, the Court must dismiss the case. St. Paul Mercury Indemnity Co. v. Red Cab Co., 303 U.S. 283, 289 (1938). A party invoking the jurisdiction of the federal court bears the burden of proving that it appears to a "reasonable probability" that the claim satisfies the statutory jurisdictional amount. Chase Manhattan Bank, N.A. v. Am. Nat'l Bank and Trust Co. of Chicago, 93 F.3d 1064, 1070 (2d Cir.1996). This determination is made based upon the plaintiff's allegations, and not based upon the merits of the case. Zacharia v. Harbor Island Spa. Inc., 684 F.2d 199, 202 (2d Cir.1984).

Defendant's argument against jurisdiction is grounded upon its interpretation of the contract terms set forth in Article III and Article XXIV regarding the extent of its liability. Plaintiff counters that defendant misreads the contract language. Without delving into the merits of the competing interpretations, the Court finds that plaintiff has

alleged a claim that appears to a "reasonable probability" to satisfy the requisite jurisdictional amount.

Defendant challenges plaintiff's standing since it was not actually one of the contracting parties.

In ruling on standing on a motion to dismiss, the Court must accept as true all material allegations of the complaint and construe the complaint in favor of the complaining party.

Plaintiff has alleged that it is a successor in interest to Fire and Casualty, the original signatory. Pursuant to Connecticut law, a successor in interest through a corporate merger or consolidation succeeds to all property and contractual rights of the predecessor. See Conn. Gen. Stat. § 33-820. Accordingly, the motion to dismiss will be denied in this respect.

## **CONCLUSION**

For the foregoing reasons, plaintiff's motion to strike [#18] is GRANTED in part, and defendant's motion to dismiss [#25] is DENIED.

Defendant is instructed to post security with the clerk of the court in the amount of $111,186 within 15 days of this ruling. If defendant does not comply with this order within this time frame, the Court will strike the pleadings.

_____/s/_____
Warren W. Eginton, Senior U.S. District Judge

Dated this 25th day of January, 2007 at Bridgeport, Connecticut.