# UNITED STATES DISTRICT COURT

# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| ARROWOOD INDEMNITY CO., | : | |
| Itself | : | 3:06CV158 |
| and as successor in | : | |
| interest to THE FIRE AND | : | |
| CASUALTY INSURANCE COMPANY | : | |
| OF CONNECTICUT, | : | |
| | : | |
| v. | : | |
| | : | |
| UNIVERSAL REINSURANCE | : | |
| COMPANY LTD., | : | |

## MEMORANDUM OF DECISION: PLAINTIFF'S MOTION TO DISMISS

This is a breach of contract action relative to a Quota Share Treaty Reinsurance Agreement entered into between plaintiff Arrowood Indemnity Co.'s predecessor in interest, The Fire and Casualty Insurance Company of Connecticut, and Universal Reinsurance Company LTD.

Defendant advances counterclaims of breach of contract, breach of the implied covenant of good faith and fair dealing, fraudulent misrepresentation, and the Connecticut Unfair Trade Practices Act ("CUTPA").

Plaintiff has filed a motion to dismiss the counterclaim.

For the following reasons, the motion to dismiss will be granted in part.

## BACKGROUND

For purposes of ruling on this motion, the Court takes the facts alleged in the counterclaim to be true.

Universal was a Rent-A-Captive under an alternative risk insurance program known as the Real Estate Licensee Professional Liability Program (the "Williams Group

Program"), administered by the Williams Underwriting Group.

The Artis Real Estate Licensee Professional Liability Insurance Program Binder set forth the terms, conditions and obligations of plaintiff, another entity known as Alternative Risk Transfer Insurance Strategies ("Artis") and the Williams Group Program. The Binder is part of a tripartite arrangement between plaintiff, Artis and the Williams Underwriting Group.

The parties agreed that defendant, as a fiduciary, would establish a separate segregated cell account, which amounted to 1.5% of the gross written premium under the Williams Group Program.

Under the Williams Group Program, Artis, by and through plaintiff, would cede to defendant the net premium collected after deducting commissions and expenses (the "Loss Fund"), which defendant deposited in the Segregated Account. The Loss Fund, which amounted to 51% of Gross Written Premium, was used to pay claims that were incurred under the Williams Group Program. Defendant did not have a right to use any portion of the Loss Fund for its own account or benefit.

The Williams Underwriting Group and Artis agreed to fund collateral requirements and/or pay losses that are in excess of the Loss Fund up to the greater of $1,000,000 or 80.4% of the Gross Written Premium under the Williams Group Program (the "Gap Layer").

The underlying action initiated by plaintiff seeks to hold defendant liable for losses in excess of the GAP Layer.

## DISCUSSION

The function of a motion to dismiss is "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." Ryder Energy Distribution v. Merrill Lynch Commodities, Inc., 748 F. 2d 774, 779 (2d Cir. 1984). When deciding a motion to dismiss, the Court must accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the pleader. Hishon v. King, 467 U.S. 69, 73 (1984). The complaint must contain the grounds upon which the claim rests through factual allegations sufficient "to raise a right to relief above the speculative level." Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955, 1965 (2007). A plaintiff is obliged to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim plausible. Iqbal v. Hasty, – – F.3d – – , 2007 WL 1717803 *10-11 (2d Cir. 2007) (applying flexible "plausibility standard" to Rule 8 pleading).

### Breach of Contract and the Implied Covenant of Good Faith and Fair Dealing

Plaintiff argues that defendant's contract claim should be dismissed because defendant cannot allege a breach of contract causing recoverable damages.

A breach of contract action requires formation of an agreement, performance by one party, breach of the agreement by the other party, and damages. Rosato v. Mascardo, 82 Conn. App. 396, 411 (2004).

Plaintiff maintains that defendant's breach of contract action is premised on plaintiff's demand that defendant "collaterize the GAP Layer, or pay losses within the GAP Layer." Plaintiff maintains that this alleged breach has caused defendant to suffer only incidental expenses or unrecoverable attorney fees. Defendant counters that it

has suffered damages because it was denied access to certain funds for a period of a year and by virtue of its contingent liability. The Court must construe the inferences of facts alleged in favor of defendant and will therefore deny the motion to dismiss on the ground that defendant cannot allege recoverable damages.

However, the Court agrees that defendant cannot recover attorney fees on its breach of contract claim. Connecticut follows the American Rule for an award of attorney fees only where explicitly permitted by the terms of a contract or a statute. Charts v. Nationwide Mut. Ins. Co., 397 F.Supp. 2d 357, 379 (D. Conn. 2005). Attorney fees may be recoverable in certain instances where the non-breaching party suffered the expense of attorney fees in a prior legal action that resulted out of the breach of contract. See Vanliner Ins. Co. v. Fay, 2005 WL 408042 *2-3 (Conn. Super.). However, this case does not represent such circumstances. Accordingly, defendant may not recover damages based on attorney fees sustained in this action.

Breach of the Implied Covenant of Good Faith and Fair Dealing

Plaintiff argues that defendant's counterclaim does not plead the essential bad faith element required for a breach of the implied covenant of good faith and fair dealing.

"A duty of good faith and fair dealing is implied in every contractual relationship and it requires that neither party do anything to injure the other's right to receive the benefits of the contract." Landry v. Spitz, 102 Conn. App. 34, 46 (2007). A breach of the implied covenant of good faith and fair dealing occurs where the injurious actions were the product of bad faith. Bepko v. St. Paul Fire and Marine Ins. Co., 2005 WL 3619253 *2 (D. Conn. 2005). In the context of a breach of the covenant of good faith

and fair dealing, bad faith involves a dishonest purpose. Barber v. Jacobs, 58 Conn. App. 330, 338 (Conn. App. 2000).

Defendant maintains that plaintiff's demand that defendant assume the risk for the losses evidences bad faith because such demand represents a clear departure from the actual agreement of the parties and the structure of the program. The Court will leave defendant to its proof as to this element.

Fraudulent Misrepresentation

Plaintiff argues that defendant's counterclaim of fraudulent misrepresentation fails Rule 9(b) scrutiny and fails to allege recoverable damages. As stated previously, the Court will leave defendant to its proof of damages.

In order to satisfy Rule 9(b), a complaint must: (1) specify the statements that the plaintiff contends were fraudulent; (2) identify the speaker; (3) state where and when the statements were made; and (4) explain why the statements were fraudulent. Antian v. Coutts Bank (Switzerland) Ltd., 193 F.3d 85, 88 (2d Cir. 1999). Plaintiff may make general allegations of malice, intent, knowledge or other state of mind, but the facts must give rise to a strong inference of fraudulent intent. Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994). The purpose of the specificity requirement is: (1) to ensure that a complaint provides defendant with fair notice of the claim; (2) to safeguard a party's reputation from improvident charges; and (3) to protect against a strike suit. O'Brien v. Nat'l Prop. Analysts Partners, 936 F.2d 674, 676 (2d Cir. 1991).

Plaintiff argues that defendant's counterclaim does not provide adequate notice of particular facts concerning the alleged misstatements. However, the facts of counterclaim make clear that the misstatements concern the defendant's alleged role in

the Williams Group Program, and that these misstatements occurred during negotiations between the parties to induce defendant to enter into certain agreements. Accordingly, the counterclaim provides fair and sufficient notice of the fraud alleged to satisfy Federal Rule of Civil Procedure 9(b). The motion to dismiss will be denied on this ground.

CUTPA

Plaintiff asserts that defendant's CUTPA claim must be dismissed as a breach of contract claim that does not constitute a CUTPA violation.

Connecticut General Statutes section 42-110b(a) provides, in relevant part:

> No person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce.

The Connecticut Supreme Court has adopted the following factors known as the "cigarette rule" to determine whether a trade practice is unfair or deceptive: "(1) whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statute, the common law, or otherwise – whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; and (3) whether it causes substantial injury to consumers, competitors, or other businessmen."  A-G Foods, Inc. v. Pepperidge Farm, Inc., 216 Conn. 200, 215 (1990). In order to prove that the practice is unfair, it is sufficient to meet only one of the criteria or to demonstrate that the practice meets all three criteria to a lesser degree. Hartford Electric Supply Co. v. Allen-Bradley Co., 250 Conn. 334, 368 (1999).

Defendant asserts that plaintiff allegedly made misrepresentations to induce defendant to enter into the agreement at issue; and consciously disregarded the structure of the Williams Group Program in an attempt to impose liability on defendant for losses that plaintiff was aware should born by Williams Underwriting. The Connecticut Appellate Court has held that a CUTPA claim is appropriate where a party has consciously refused to honor an agreement by which it is bound and the non-breaching party has been forced to seek redress in court. <u>Gebbie v. Cadle Co.</u>, 49 Conn. App. 265, 279 (1998). Accordingly, defendant has alleged a viable CUTPA claim that survives a motion to dismiss.

## CONCLUSION

For the foregoing reasons, the motion to dismiss [doc. # 128] is DENIED as to the substance of all claims; however, the Court DISMISSES the request for attorney fees based on breach of contract.

_____/s/_____
Warren W. Eginton, Senior U.S District Judge

Dated this _6__th day of May 2008, at Bridgeport, Connecticut.